## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**PAUL POUPART**                                        **CIVIL ACTION**

**VERSUS**                                                  **NO. 15-1340**

**WARDEN TANNER**                                  **SECTION: "E"(1)**

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Paul Poupart, is a state prisoner incarcerated at the Elayn Hunt Correctional Center in St. Gabriel, Louisiana. On January 12, 2011, he was convicted of public intimidation under Louisiana law.[1] On February 11, 2011, he was sentenced to a term of five years imprisonment.[2] On April 29, 2011, he was found to be a multiple offender and was resentenced as such to a term of twenty years imprisonment without benefit of probation or suspension of

---

[1] State Rec., Vol. 2 of 6, transcript of January 12, 2011, p. 125; State Rec., Vol. 1 of 6, minute entry dated January 12, 2011; State Rec., Vol. 1 of 6, jury verdict form.

[2] State Rec., Vol. 2 of 6, transcript of February 11, 2011; State Rec., Vol. 1 of 6, minute entry dated February 11, 2011.

sentence.[3]  On February 28, 2012, the Louisiana Fifth Circuit Court of Appeal affirmed his conviction and sentence.[4]  His related writ application was then denied by the Louisiana Supreme Court on October 8, 2012.[5]

On August 30, 2013, petitioner, through counsel, filed an application for post-conviction relief with the state district court,[6] and petitioner then subsequently filed a *pro se* supplemental application.[7]  Those applications were denied on March 10, 2014.[8]  His related writ applications were then likewise denied by the Louisiana Fifth Circuit Court of Appeal on June 24, 2014,[9] and by Louisiana Supreme Court on March 27, 2015.[10]

On April 24, 2015, petitioner, through counsel, filed the instant federal application for habeas corpus relief,[11] and the state responded to that application.[12]  Petitioner's counsel was subsequently permitted to withdraw.[13]  Petitioner then filed a *pro se* supplement to his federal application, raising additional claims,[14] the state filed a response to that supplement,[15] and petitioner filed a reply to the state's response.[16]  The state does not challenge the timeliness of petitioner's federal application or argue that he failed to exhaust his remedies in the state courts. Accordingly, the undersigned will proceed to a review of petitioner's claims.

---

[3] State Rec., Vol. 2 of 6, transcript of April 29, 2011; State Rec., Vol. 1 of 6, minute entry dated April 29, 2011.
[4] State v. Poupart, 88 So.3d 1132 (La. App. 5th Cir. 2012); State Rec., Vol. 2 of 6.
[5] State v. Poupart, 98 So.3d 867 (La. 2012); State Rec., Vol. 2 of 6.
[6] State Rec., Vol. 3 of 6.
[7] State Rec., Vol. 4 of 6.
[8] State Rec., Vol. 4 of 6, Order dated March 10, 2014.
[9] State v. Poupart, No. 14-KH-375 (La. App. 5th Cir. June 24, 2014); State Rec., Vol. 4 of 6.
[10] State ex rel. Poupart v. State, 162 So.3d 383 (La. 2015); State v. Poupart, 162 So.3d 382 (La. 2015); State Rec., Vol. 4 of 6.
[11] Rec. Doc. 1.
[12] Rec. Doc. 7.
[13] Rec. Doc. 12.
[14] Rec. Doc. 13.
[15] Rec. Doc. 14.
[16] Rec. Doc. 15.

**Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court

precedent simply does not warrant habeas relief.  Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so.  As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>      If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein.  White v. Woodall, 134 S. Ct. 1697, 1701 (2014).

## Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts of this

case as follows:

> At trial, Michael Baratinni testified that he is the owner of a bar located in
> Metairie.  He stated that Detective Steve Higgerson worked at his bar as a detail
> officer.  He explained that a few years before defendant was arrested in this case,
> Detective Higgerson arrested defendant for an incident that occurred outside of the
> bar and charged him with battery.  Mr. Baratinni testified that approximately two
> days before his trial on the battery charge, defendant went to the bar and spoke to
> him about Detective Higgerson.  Defendant told Mr. Baratinni to tell Detective
> Higgerson that if he showed up in court, defendant had pictures of a "girl" that he
> would "go public with."  The next day, an assistant district attorney came to the bar
> to take pictures for the trial on defendant's battery charge.  At that time, Mr.
> Baratinni informed the assistant district attorney that defendant had been in the bar
> the day before and had threatened Detective Higgerson.  Thereafter, Mr. Baratinni
> was interviewed by Lieutenant Cantrell and Lieutenant Bruce Harrison regarding
> the threat.
>
> On cross-examination, Mr. Baratinni testified that the interviews with the
> police took place at his bar after the pictures were posted on *The Dirty.com* website.
> Mr. Baratinni stated that Detective Higgerson had worked for him for about ten
> years and that they were friends.  Mr. Baratinni replied negatively when asked
> whether defendant showed him any pictures or described the pictures on the day
> defendant made the threats.  He stated that he had no idea at that time that defendant
> was referring to a picture of a girl with her legs open on the hood of Detective
> Higgerson's marked police vehicle and a picture of a girl on Detective Higgerson's
> vehicle with her "behind in the air" while Detective Higgerson was standing next
> to the vehicle.  Mr. Baratinni further testified that he was present the night the
> pictures were taken.  He had no recollection, however, of a girl on the hood of
> Detective Higgerson's vehicle.  Further, he told the police that he did not think
> Detective Higgerson would allow a girl to get on the hood of his vehicle.  Defense
> counsel then asked, "So when you supposedly called [Detective Higgerson] to tell
> him about what [defendant] told you, what did you tell him?  What was the big
> threat, if you didn't know what was even in the pictures?"  Mr. Baratinni responded,
> "Well, I relayed the message.  It was that if [Detective Higgerson] was to go to
> court, [defendant] was going to go public with some pictures he had."
>
> On redirect examination, Mr. Baratinni reiterated that defendant came by
> his bar and told him to pass the threat on to Detective Higgerson, and to tell
> Detective Higgerson that it would be in his best interest not to go to court.  Mr.
> Baratinni repeated that he passed this information on to Detective Higgerson.
>
> The State then called Arthur Massel, who stated that he has known Mr.
> Baratinni for about fifteen years and had previously been employed at Mr.
> Baratinni's bar.  Mr. Massel testified that he was present when defendant spoke
> with Mr. Baratinni at the bar, overhearing a conversation in which defendant "said

a policeman way back [sic] -- he made a threat to him with some pictures that he had that he was going to go public with." Mr. Massel explained that defendant stated that he would go public with the pictures if Detective Higgerson appeared in court.

On cross-examination, Mr. Massel testified that he has known Detective Higgerson for about three or four years. He stated that the day he overheard the conversation between defendant and Mr. Baratinni was the first and only time he had ever seen defendant. Thereafter, he gave a statement in which he told the police that as defendant was walking out of the bar, he heard him tell Mr. Baratinni to "[l]et [Detective Higgerson] know if he shows up in court I can go public with this."

Detective Steve Higgerson testified that he has been employed with the Jefferson Parish Sheriff's Office for thirteen years, and he also worked a private detail at Mr. Baratinni's bar for about eight or nine years. At trial, he identified defendant as the same individual he arrested for second degree battery due to a fight in the street in front of the bar.

The night before defendant's trial for battery, Detective Higgerson received a phone call from Mr. Baratinni informing him that defendant "had some pictures [he] might not want to get out," and it would be in his best interest if he did not testify at trial. Detective Higgerson stated that he took that as a threat. Despite this information, he testified at defendant's trial on the battery charge in August 2009. Within a month after the trial, two photographs were posted on the internet depicting a woman posing on a Sheriff's Office patrol car.

At trial, Detective Higgerson described the circumstances at the time the photographs were taken. He testified that he had his back to his patrol car and was speaking with Mr. Baratinni, who had pulled up in his truck, when Mr. Baratinni brought his attention to the fact that there was a person on the hood of his vehicle. Detective Higgerson testified that when he turned to look, he saw the image captured in State exhibit two, which depicts a woman on the hood of his vehicle with her legs open. He noticed people standing outside, but he did not see the photographer.

On cross-examination, Detective Higgerson testified that he no longer works detail at the bar. He did not recall being in these photographs and did not remember a girl being on his vehicle before the photographs were posted on the internet. When Mr. Baratinni called him regarding the photographs, he had no idea what was depicted in the photographs. He acknowledged that defendant never contacted him directly. He testified that after he received the phone call from Mr. Baratinni, the next day at trial, he informed the assistant district attorney what Mr. Baratinni had told him.

Lieutenant Bruce Harrison testified that he has been employed with the Jefferson Parish Sheriff's Office since 1995. In August 2009, he was assigned an investigation involving public intimidation where the victim was Detective Higgerson. As part of that investigation, he interviewed Mr. Baratinni, Mr. Massel and Detective Higgerson and saw the two photographs of the woman on the car that were posted on *The Dirty.com* website.

Numerous items were seized from defendant's residence, pursuant to a search warrant, including a disc containing the two photographs relevant to the

case. Lieutenant Harrison testified that a piece of paper with defendant's arrest register in the battery case was folded inside two pieces of paper on which the pictures of the girl on the car were printed. Additionally, a ledger was found near the computer table. This ledger listed the name and address of the victim from the original battery incident on one page; Detective Higgerson's name, badge number, off duty number and payroll number were listed on the next page.

Defendant was subsequently arrested on September 8, 2009. Lieutenant Harrison read defendant his <u>Miranda</u> rights. Thereafter, defendant admitted that he took the photographs, but denied posting them on the website. He further admitted that he was present at Mr. Baratinni's bar the week of his trial for second degree battery, the same week he allegedly made the threats.[17]

### <u>Petitioner's Claims</u>[18]

### <u>Sufficiency of the Evidence</u>

Petitioner argues that there was insufficient evidence to support his conviction. On direct appeal, the Louisiana Fifth Circuit Court of Appeal denied that claim, holding:

> Defendant argues the evidence was insufficient for a rational trier of fact to find him guilty beyond a reasonable doubt. Specifically, he contends that he lacked the specific intent to threaten or influence Detective Higgerson as a witness because (1) the comment was vague and unclear; (2) the comment was made to a third person; (3) it is not certain the comment was meant as a message; and (4) if the comment was a threatening message, there is no evidence that defendant actively desired its delivery.
>
> Conversely, the State contends that given the testimony presented at trial, the jury was reasonable in finding that defendant made the threat with the specific intent to prevent Detective Higgerson from testifying at defendant's trial for second degree battery.
>
> The appropriate standard of review for determining the sufficiency of the evidence was established in <u>Jackson v. Virginia</u>, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). According to <u>Jackson</u>, the reviewing court must decide, after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 provides that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." <u>State v. Wooten</u>, 99-181 (La.App. 5 Cir. 6/1/99), 738 So.2d 672, 675, <u>writ denied</u>, 99-2057 (La. 1/14/00), 753 So.2d 208. This is not a separate test from the <u>Jackson</u> standard, but rather provides a helpful basis for determining the existence of reasonable doubt. <u>Id</u>. All evidence, both direct and

---

[17] <u>State v. Poupart</u>, 88 So.3d 1132, 1135-37 (La. App. 5th Cir. 2012); State Rec., Vol. 2 of 6.

[18] In this Report and Recommendation, petitioner's claims are not discussed in the order presented in his federal applications. However, all claims are discussed herein.

circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. <u>Wooten</u>, *supra* (citations omitted).

In this case, defendant was convicted of public intimidation, LSA-R.S. 14:122, which provides, in pertinent part:

> A. Public intimidation is the use of violence, force, or threats upon any of the following persons, with the intent to influence his conduct in relation to his position, employment, or duty:
>
> > (1) Public officer or public employee.
>
> > * * *
>
> > (3) Witness, or person about to be called as a witness upon a trial or other proceeding before any court, board or officer authorized to hear evidence or to take testimony.

The offense of public intimidation requires specific criminal intent. <u>State v. Meyers</u>, 94-231 (La.App. 5 Cir. 9/14/94), 643 So.2d 1275, 1278. Public intimidation is not the intentional use of force or threats upon a public employee, but rather the use of force or threats upon the employee with the specific intent to influence the employee's conduct in relation to the employee's duties. <u>Id</u>. (citations omitted.)

Specific intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1). Specific intent is a state of mind, and as such, need not be proven as a fact but may be inferred from the circumstances and actions of the defendant. <u>State v. Graham</u>, 420 So.2d 1126, 1127 (La. 1982) (citations omitted).

At the trial of this matter, the State presented several witnesses who testified regarding the alleged threat made by defendant against Detective Higgerson. Mr. Baratinni testified that defendant told him "to pass the information on to [Detective Higgerson] about a court date, [sic] if [Detective Higgerson] was to show up [sic] he had pictures of a girl that he was going to go public with." Additionally, Mr. Massel testified that he overheard defendant tell Mr. Baratinni that "he had some pictures [and] if [Detective Higgerson] showed up in court that these would go public." At trial, Detective Higgerson stated that the night before defendant's trial for battery, he received a phone call informing him that defendant "had some pictures [he] might not want to get out," and it would be in his best interest if he did not testify at trial. Detective Higgerson testified that he took that as a threat. The defense did not present any witnesses at trial and defendant did not testify on his own behalf. Thus, the jury found the testimony presented by the State's witnesses to be credible and obviously found that defendant made the threats. It is not the appellate court's function to second-guess the credibility of witnesses as determined by the trier of fact, or to reweigh the evidence. <u>State v. Baker</u>, 01-1397 (La.App. 5 Cir. 4/30/02), 816 So.2d 363, 365 (citation omitted).

In State v. Jones, 00-980 (La.App. 5 Cir. 10/18/00), 772 So.2d 788, this court upheld a conviction of public intimidation. In Jones, a deputy responded to a call regarding a disturbance inside of a bar. The deputy arrived at the bar and noticed the defendant, who matched the description of the perpetrator who was threatening a female. The defendant threatened the deputy and continued making threats to the deputy until another deputy arrived on the scene. On appeal, the defendant argued that the evidence presented at trial was insufficient to support his conviction because there was no proof that he intended to influence the deputy's conduct in relation to her position, employment or duty. Id., 00-980, 772 So.2d at 790. This Court found the defendant made the threats of physical violence and employment termination, before he was arrested, with the intent to persuade the deputy not to arrest him and that the circumstantial evidence was sufficient to support the defendant's public intimidation conviction. Id., 00-980, 772 So.2d at 792. Similarly in this case, the jury could have reasonably concluded that the threats made by defendant were an attempt to influence the conduct of Detective Higgerson in relation to his duty as a public officer or as a potential witness. At trial, Mr. Baratinni stated that a couple days before defendant's trial for battery, defendant told him to tell Detective Higgerson that if he showed up in court, defendant would go public with pictures of a girl. Detective Higgerson testified that the night before defendant's trial for battery, he received a phone call from Mr. Baratinni informing him that defendant "had some pictures [he] might not want to get out," and it would be in his best interest if he did not testify at trial. Detective Higgerson testified that he took that as a threat but nevertheless testified at defendant's trial. Within a month of defendant's trial for battery, two photographs depicting a girl posing on the hood of Detective Higgerson's car were posted on the internet. Thereafter, in a search of defendant's residence, copies of the pictures and a disc that contained both photographs were discovered. After being arrested, defendant admitted that he had taken the photographs, and that he was present at the bar the week of his second degree battery trial (the same week he allegedly made the threats).

Based on this testimony, we find that defendant's statements were made with specific intent to attempt to influence the conduct of Detective Higgerson in relation to his duty as a public officer or as a potential witness. Accordingly, a rational trier of fact could have inferred that defendant had the requisite specific intent to influence Detective Higgerson's conduct with his threats of "going public" with the photographs.

Further, we find no merit to defendant's arguments. First, the comment is not vague or unclear. Mr. Baratinni testified that defendant told him "to pass the information on to" Detective Higgerson that if Detective Higgerson was to show up at court, defendant "had pictures of a girl that he was going to go public with." Mr. Baratinni further stated that defendant told him that it would be in Detective Higgerson's best interest not to go to court. Second, the public intimidation statute, LSA-R.S. 14:122, does not require that the threat be made directly from defendant to the person he is threatening. Third, based on Mr. Baratinni's testimony that defendant told him to pass the information on to Detective Higgerson, we find that

the comment was not only meant as a message, but that defendant actively desired its delivery.

This assignment of error is without merit.[19]

The Louisiana Supreme Court then likewise denied relief without assigning additional reasons.[20]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000).  For the following reasons, the Court finds that he has made no such showing.

As correctly noted by the Louisiana Fifth Circuit Court of Appeal, claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979).  In Jackson, the United States Supreme Court held that, in assessing such a claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. at 319.  Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'"  Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added); see also Cavazos v. Smith, 132 S. Ct. 2, 4 (2011) ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. ...  Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken,

---

[19] State v. Poupart, 88 So.3d 1132, 1137-40 (La. App. 5th Cir. 2012); State Rec., Vol. 2 of 6.
[20] State v. Poupart, 98 So.3d 867 (La. 2012); State Rec., Vol. 2 of 6.

but that they must nonetheless uphold."). Moreover, because the state court's decision applying the already deferential <u>Jackson</u> standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential." <u>Parker v. Matthews</u>, 132 S. Ct. 2148, 2152 (2012); <u>see also</u> <u>Coleman v. Johnson</u>, 132 S. Ct. 2060, 2062 (2012).

In the instant case, petitioner's argument is based primarily on the *state* law requirement that every reasonable hypothesis of innocence be excluded when assessing the sufficiency of circumstantial evidence to support a conviction. La. Rev. Stat. Ann. § 15:438. Although that rule was expressly considered in the foregoing the state court opinion, petitioner argues that the rule was nevertheless misapplied in the court's analysis. However, whether or not the state court properly analyzed petitioner's claim under § 15:438 is of no moment in this proceeding. It is beyond cavil that the Louisiana standard set forth in § 15:438 simply does *not* apply in federal habeas corpus proceedings -- in these proceedings, *only* the <u>Jackson</u> standard need be satisfied, even if state law would impose a more demanding standard of proof. <u>Foy v. Donnelly</u>, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); <u>Higgins v. Cain</u>, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010), <u>aff'd</u>, 434 Fed. App'x 405 (5th Cir. 2011); <u>Williams v. Cain</u>, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), <u>aff'd</u>, 408 Fed. App'x 817 (5th Cir. 2011); <u>Davis v. Cain</u>, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); <u>Wade v. Cain</u>, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), <u>aff'd</u>, 372 Fed. App'x 549 (5th Cir. Apr. 9, 2010); <u>see also</u> <u>Coleman</u>, 132 S. Ct. at 2064 ("Under <u>Jackson</u>, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence

that the Due Process Clause requires to prove the offense is purely a matter of federal law." (citation and internal quotation marks omitted)).

Under Jackson, the state did in fact meet its burden of proof.  For example, the state established that petitioner made the intimidating threats through the eyewitness testimony of Baratinni and Massel – and it is clear the testimony of even a *single* eyewitness generally is sufficient to support a conviction.  See United States v. King, 703 F.2d 119, 125 (5th Cir. 1983); see also Phillips v. Cain, Civ. Action No. 11-2725, 2012 WL 2564926, at *13 (E.D. La. Apr.11, 2012), adopted, 2012 WL 2565025 (E.D. La. July 2, 2012).  Although petitioner now argues that those witnesses were lying, the jurors, as was their right, obviously chose to believe them.  Where, as here, a petitioner's insufficient evidence claim is based on arguments concerning witness credibility, a federal habeas court generally will not grant relief.  See Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review."); Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); McCowin v. Scott, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994); Phillips v. Cain, Civ. Action No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. Apr. 11, 2012), adopted, 2012 WL 2565025 (E.D. La. July 2, 2012); Picou v. Cain, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

In summary, for the reasons explained by the Louisiana Fifth Circuit Court of Appeal, it is clear that when the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was *irrational*.  Therefore, petitioner cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United

States.  Accordingly, under the doubly-deferential standards of review which must be applied by this federal habeas court, relief is not warranted.

## **Miranda Violation**

Petitioner next argues that the state court erred in denying the motion to suppress his statements as a violation of <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).  The events which led to petitioner's statements were recounted in Harrison's testimony on direct examination by the prosecutor:

Q.    And explain to me what happened in this case.

A.    Once I was notified that he was in custody, in preparation of doing an interview I took out one of these [advisement of rights] forms, filled it out. When he arrived I went into the interrogation room, and I read the rights and asked if he understood and he said yes.  I explained I would like him to acknowledge his understanding by initialing and signing.  He said he would rather not sign.  He said he had representation, he had an attorney, and he would prefer not to sign anything.

Q.    So did you question him at that point?

A.    He said he didn't want to answer any questions.

Q.    So did you ask him any questions?

A.    No, what I did was just explain to him that I wanted to discuss the case with him, I wanted to lay out what I thought was the simplicity of the case to him, and then ask him again if he wanted me to ask any questions.

Q.    At that point did you ask him any questions?

A.    No.  No, he said that would be fine.  I could tell him whatever I wanted.

….

Q.    … After you told him how you perceived the case the case, did he make any statements?

A.    Yes.

Q.    What did he say?

14

A.      He admitted having taken the pictures, but denied having posted them on the website. It was at that point that I again reiterated that I didn't think that was part of the crime, that the crime had been committed prior to that, and at that point he again denied posting the pictures, but admitted that he had been at Mike's Bar the week that he was tried for second degree battery.[21]

Petitioner does not dispute this version of events. Rather, he merely argues that his rights were violated because, *after* he had expressly invoked his right to remain silent, Harrison nevertheless continued to talk to him, thereby "enticing" him to later make the statements he now challenges.

When petitioner raised the instant claim on direct appeal, the Louisiana Fifth Circuit Court of Appeal denied the claim, holding:

Defendant argues that after his arrest, he asserted his right to remain silent. Nevertheless, Lieutenant Harrison "continued to entice and cajole [him] into providing information and a statement." Therefore, defendant contends his statement was made in violation of Miranda and should not have been admissible at trial.

The State asserts that defendant voluntarily and intelligently changed his mind. Thus, defendant's statement was not in violation of Miranda and was properly admitted at trial.

The trial court's decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Burns, 04-175, p. 5 (La.App. 5 Cir. 6/29/04), 877 So.2d 1073, 1075. A trial court is afforded great discretion when ruling on a motion to suppress, and its ruling will not be disturbed absent an abuse of that discretion. State v. Favors, 09-1034, p. 9 (La.App. 5 Cir. 6/29/10), 43 So.3d 253, 259, writ denied, 10-1761 (La. 2/4/11), 57 So.3d 309 (citations omitted). In determining whether the trial court's ruling on a motion to suppress is correct, an appellate court is not limited to the evidence presented at the motion to suppress hearing but also may consider pertinent evidence presented at trial. Favors, 09-1034 at 9, 43 So.3d at 259.

Before an inculpatory statement made during a custodial interrogation may be introduced into evidence,[FN4] the State must prove beyond a reasonable doubt that the defendant was first advised of his Miranda rights, that he voluntarily and intelligently waived his Miranda rights, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducement, or promises. State v. Franklin, 03-287, p. 4 (La.App. 5 Cir. 9/16/03), 858 So.2d 68, 70, writ denied, 03-3062 (La. 3/12/04), 869 So.2d 817. A statement

_____
[21] State Rec., Vol. 2 of 6, transcript of January 12, 2011, pp. 88-91.

15

obtained from the defendant by direct or implied promises, or by the exertion of improper influence must be considered involuntary, and therefore, inadmissible. State v. Batiste, 06-824, p. 10 (La.App. 5 Cir. 3/13/07), 956 So.2d 626, 634, writ denied, 07-892 (La. 1/25/08), 973 So.2d 751.  Whether a defendant's purported waiver of his Miranda rights was voluntary is determined by the totality of the circumstances.  Batiste, 06-824, 956 So.2d at 633.  The critical factor in a knowing and intelligent waiver is whether the defendant was able to understand the rights explained to him and voluntarily gave the statement.  Batiste, 06-824, 956 So.2d at 634.  Testimony of the interviewing police officer alone may be sufficient proof that a defendant's statements were freely and voluntarily given.  State v. Mackens, 35,350, p. 13 (La.App. 2 Cir. 12/28/01), 803 So.2d 454, 463, writ denied, 02-0413 (La. 1/24/03), 836 So.2d 37.

> [FN4] The United States Supreme Court defined "custodial interrogation" as the "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."  Miranda v. Arizona, 384 U.S. at 444, 86 S.Ct. at 1612.

In this case, defendant filed various pre-trial motions, including a "Motion to Suppress the Confession."   At the suppression hearing, Lieutenant Bruce Harrison testified that on September 8, 2009, defendant was arrested and taken into custody.  Upon his arrival at the detective's bureau, Lieutenant Harrison advised defendant of his Miranda rights.  Lieutenant Harrison stated that defendant refused to waive his rights.  Lieutenant Harrison then told defendant that he wanted to explain the simplicity of the case to him, and asked him if he would be willing to listen.  Defendant agreed to listen.  He then told defendant what the investigation had determined, and defendant then gave a statement acknowledging that he took the pictures and was at the bar at the time the threat was allegedly made, but denying that he posted the pictures on the internet.  Lieutenant Harrison testified that he did not ask defendant any questions or coerce, intimidate or promise him anything.  Further, since his statement was not made in connection with any questioning, the statement was not recorded.

In support of the motion to suppress, defense counsel argued that defendant did not waive his rights, as indicated by the Rights of Arrestee form that was not filled out.  Further, he specifically told Lieutenant Harrison that he had a lawyer, and that he did not want to give a statement.  Nevertheless, Lieutenant Harrison pressed him and got a statement out of him.  Defense counsel maintained that if defendant did not waive his rights, the statement was unconstitutionally obtained and should be suppressed.

The State argued that defendant made the statement voluntarily and not in response to any questioning by the police.  After a hearing on the motion, the trial court denied defendant's motion to suppress the statement.

In State v. Taylor, 490 So.2d 459, 461 (La.App. 4 Cir. 1986), writ denied, 496 So.2d 344 (La. 1986), the Fourth Circuit held that statements made by the defendant after he expressed his desire to remain silent were not taken in violation

16

of <u>Miranda</u>, as the statements were the result of the defendant voluntarily and intelligently changing his mind.  In <u>Taylor</u>, after the defendant had been read his <u>Miranda</u> rights, he indicated that he did not want to make a statement.  The detective then explained to the defendant what the investigation was going to entail and the defendant subsequently made a statement.  <u>Id.</u>, 490 So.2d at 460.  The Fourth Circuit stated:

> The record shows that defendant understood his right to remain silent, that [the detective] did not brow beat him, and that no undue pressure was applied.  A few minutes after he declined to talk about the robberies defendant voluntarily and intelligently changed his mind and decided he would talk.

The Fourth Circuit concluded that the defendant's statements were not taken in violation of <u>Miranda</u> and were properly admitted into evidence, citing <u>State v. Daniel</u>, 378 So.2d 1361 (La. 1979). <u>Taylor</u>, 490 So.2d at 461.

In <u>Daniel</u>, *supra*, the Louisiana Supreme Court found the defendant's statement was not made in violation of <u>Miranda</u>.  In that case, after the defendant was informed of his <u>Miranda</u> rights, he gave an indecisive negative response when asked if he wanted to make a statement.  The officer then told the defendant, "[B]efore you make up your mind one way or the other as to whether or not you want to talk to us, let me tell you what we've got."  After the officer gave defendant this information, defendant made a statement.  The Louisiana Supreme Court stated:

> On these facts[,] we believe the trial judge should have denied the motion to suppress.  Nothing in <u>Miranda</u> prevents an accused party from changing his mind and giving a statement after he has previously declined to do so, so long as the statement is voluntary and intelligently made.

<u>Daniel</u>, 378 So.2d at 1366.

The facts of both <u>Taylor</u> and <u>Daniel</u> are similar to this case.  The record in this case shows that defendant initially indicated that he did not want to waive his rights and make a statement.  Lieutenant Harrison then told defendant that he wanted to explain the case to him and defendant agreed to listen.  Defendant then changed his mind and made a voluntary statement.  Accordingly, we find that defendant's statement was not made in violation of <u>Miranda</u>, and thus, the trial court did not err in denying defendant's motion to suppress.

This assignment of error is without merit.[22]

The Louisiana Supreme Court then likewise denied relief without assigning additional reasons.[23]

---

[22] <u>State v. Poupart</u>, 88 So.3d 1132, 1140-42 (La. App. 5th Cir. 2012); State Rec., Vol. 2 of 6.
[23] <u>State v. Poupart</u>, 98 So.3d 867 (La. 2012); State Rec., Vol. 2 of 6.

As the state court correctly noted, the clearly established federal law with respect to such claims is Miranda.  In Miranda, the United States Supreme Court held:

> [T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.  By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.  As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required.  Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.  The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently.  If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning.  Likewise, *if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him.*  The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned.

Miranda, 384 U.S. 444-45 (emphasis added; footnote omitted).  The Supreme Court subsequently developed the contours of this right, holding "that the admissibility of statements obtained after the person in custody has decided to remain silent depends under Miranda on whether his 'right to cut off questioning' was 'scrupulously honored.'"  Michigan v. Mosley, 423 U.S. 96, 104 (1975).

The United States Fifth Circuit Court of Appeals has further explained:

> Rather than issuing a bright-line rule for determining when police were scrupulous in honoring suspects' rights, the [Supreme] Court examined a number of operative facts, all present in Mosley.  See [Mosley, 423 U.S.] at 104-06, 96 S.Ct. 321.  The Court indicated that it found four factors particularly probative:  (1) whether police immediately ceased initial interrogation upon the suspect's request; (2) whether questioning was resumed after a "significant period of time," e.g., "an interval of more than two hours"; (3) whether a "fresh set of warnings" was provided; and (4) whether the topic of the second interrogation was a different crime.  See id. at 105-06, 96 S.Ct. 321.  We have read Mosley to include a fifth factor, implicit in the third, that "the suspect was advised prior to initial

interrogation that he was under no obligation to answer question[s]."[FN2] <u>United States v. Alvarado-Saldivar</u>, 62 F.3d 697, 699 (5th Cir. 1995).

> [FN2]  As <u>Mosley</u> does not do so explicitly, different courts have enunciated different factors when reading the Court's opinion.  <u>See, e.g.</u>, <u>Anderson v. Calderon</u>, 232 F.3d 1053, 1066 (9th Cir. 2000) (finding five factors, including "[a] different officer resumed the questioning"); <u>Evans v. Rogerson</u>, 77 F.Supp.2d 1014, 1031 (S.D. Iowa 1999) (identifying nine factors cited by the <u>Mosley</u> Court); <u>People v. Fleming</u>, 103 Ill. App. 3d 194, 58 Ill. Dec. 956, 431 N.E.2d 16, 18 (1981) (noting only three factors as central to the <u>Mosley</u> analysis).
>
> It does not appear that any single factor is dispositive, though. <u>See, e.g.</u>, <u>Kelly v. Lynaugh</u>, 862 F.2d 1126, 1131 (5th Cir. 1988) (stating that "it is not decisive that the interrogations covered the same crime").  Rather, a case-by-case analysis of police conduct is required, <u>Wilcher v. Hargett</u>, 978 F.2d 872, 877 (5th Cir. 1992), although this can sometimes "produce opposite results in cases that are similar in some respects."  <u>Charles v. Smith</u>, 894 F.2d 718, 726 (5th Cir. 1990).

<u>Hebert v. Cain</u>, 121 Fed. App'x 43, 46 (5th Cir. 2005).

The undisputed facts of the instant case give the Court pause.  After petitioner expressly told Harrison that he wished to remain silent, Harrison nevertheless failed to drop the matter for *any* period of time, much less a "significant period of time."  Although Harrison may not have further *questioned* petitioner, he arguably "persist[ed] in repeated efforts to wear down his resistance and make him change his mind."  <u>Mosley</u>, 423 U.S. at 105-06.  Specifically, without any break whatsoever, Harrison continued speaking to petitioner about the *same* crime, admittedly in the hope that it would encourage petitioner to change his mind and make a statement *despite* his prior express invocation of his right to remain silent regarding that crime.  When petitioner did in fact relent and decide to give a statement, there is no indication that a "fresh set of warnings" was provided.

Under these facts one could reasonably question whether petitioner's "right to cut off questioning" was "scrupulously honored" as required by the Supreme Court precedent.  Therefore, if this Court were deciding this issue in a vacuum, it might be inclined to find that the facts of this

case fall on the impermissible side of the <u>Mosley</u> line.  However, the Court does not have free rein to consider this claim *de novo*; rather, it must instead analyze the claim under the highly deferential standards of review mandated by the AEDPA.

The admissibility of a confession is a mixed question of law and fact.  <u>Miller v. Fenton</u>, 474 U.S. 104, 112 (1985); <u>ShisInday v. Quarterman</u>, 511 F.3d 514, 522 (5th Cir. 2007).  Therefore, under the AEDPA, a federal habeas court must defer to the state court's decision on such a claim, unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1); <u>Barnes v. Johnson</u>, 160 F.3d 218, 222 (5th Cir. 1998).  And, as previously explained, "an unreasonable application is different from an incorrect one."  <u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002).  Accordingly, the mere fact that the state court may have misapplied Supreme Court precedent would not warrant habeas relief.  <u>Puckett v. Epps</u>, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

Although the issue is arguably close, the undersigned concludes that the state court's decision was not *unreasonable*.  Here, the <u>Miranda</u> warnings were in fact given.  Although petitioner stated that he did not wish to make a statement after being advised of his rights, he nevertheless agreed to hear what Harrison had to say about the case.  After listening to Harrison, petitioner opted to make the statements in question, and there is no suggestion that he was in any way coerced or forced to do so.  Although the <u>Miranda</u> warnings were not repeated after petitioner changed this mind, that event was apparently close in time to when the warnings were initially given.  This set of facts is sufficiently distinguishable from either <u>Miranda</u> or <u>Mosely</u> so as to afford the state court a measure of discretion in weighing the various factors and in assessing the

voluntariness of the statements. Simply put: Although reasonable jurists could perhaps disagree on the *correctness* of the state court's ultimate conclusion, that conclusion was not *objectively unreasonable* and, therefore, this Court should defer to the finding that there was no constitutional violation.

Moreover, in any event, *even if* petitioner's constitutional rights were violated in this respect, it does not necessarily follow that he would be entitled to federal relief. On the contrary, it is clear that the admission of an involuntary statement is a trial error subject to harmless error analysis. Arizona v. Fulminante, 499 U.S. 279, 310 (1991). Therefore, even if the District Judge finds that petitioner's Fifth Amendment rights were violated, federal habeas relief would be warranted only if that error had a "substantial and injurious effect or influence in determining the jury's verdict. Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quotation marks omitted); accord Hopkins v. Cockrell, 325 F.3d 579, 583 (5th Cir. 2003).

The undersigned has no hesitation in finding that *even if* an error existed with respect to the statement was committed, it was clearly harmless under these standards. In his statements, petitioner did not incriminate himself, in that he did *not* admit to making the threats which served as foundation for the crime. Rather, he admitted only two ancillary facts: (1) he took the pictures and (2) he was present at the bar during the week when the threats were allegedly made. As to the first fact, petitioner's conviction was in no way based on who took the pictures – the taking of the pictures was neither an element of the crime nor a fact the state was required to prove in order to procure a valid conviction. As to the second fact, petitioner's admission that he was present in the bar was more directly relevant but it was also cumulative of other evidence – petitioner's presence

21

at the bar had already been established through the eyewitness testimony of both Baratinni and

Massel.  See Cangelosi v. Miller, 611 F. Supp. 2d 274, 293 (W.D.N.Y. 2009) (even if admission

of a statement violated Miranda, the error was harmless where statement was cumulative of

properly admitted evidence).  In light of the evidence presented at trial, there is simply no basis

for concluding that petitioner's non-incriminating, rather innocuous statement had a substantial

and injurious effect or influence in determining the jury's verdict.   Therefore, even if a

constitutional violation occurred, petitioner is not entitled to relief based on this claim.

### Ineffective Assistance of Counsel

Petitioner also claims that he received ineffective assistance of counsel.  In the last reasoned

state court decision addressing his multi-faceted ineffective assistance claim, the Louisiana Fifth

Circuit Court of Appeal denied relief, holding:

> In his first claim, relator contends that he was denied effective assistance of
> counsel at the trial of his charge of public intimidation in violation of La. R.S.
> 14:122 because his counsel failed to impeach the State's witness, Artie Massel,
> regarding his criminal history.  Relator's charge was based upon an alleged
> statement that he made to Michael Baratinni in the presence of Massel and relator's
> girlfriend, telling Baratinni to inform Deputy Steve Higgerson that if Deputy
> Higgerson testified against relator in another case, relator would release certain
> photographs.  Relator contends that at the time Massel was questioned by police,
> he had outstanding warrants/attachments in several criminal matters and
> convictions.  Relator contends that his trial counsel was neither provided with any
> information regarding the attachments, nor did he research Massel's criminal
> background.   Relator claims that Massel testified for the sole purpose of
> corroborating Baratinni's testimony, and therefore, his trial counsel's failure to
> impeach Massel by attacking Massel's credibility constituted deficient performance
> under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674
> (1984).
> To prevail in a post-conviction ineffective assistance of counsel claim,
> relator must establish (1) that counsel's performance fell below an objective
> standard of reasonableness under prevailing professional norms, and (2) counsel's
> inadequate performance prejudiced defendant.  Strickland, supra; State v. Suggs,
> 11-64 (La. App. 5 Cir. 12/13/11), 81 So.3d 815, 825, writ denied, 12-0054 (La.
> 4/20/12), 85 So.3d 1269.  Effective assistance of counsel has been defined to mean
> not errorless counsel, and not counsel judged ineffective in hindsight, but counsel
> reasonably likely to render effective assistance.  State v. Ratcliff, 416 So.2d 528,

531 (La. 1982).  After reviewing relator's application, we find that relator has offered only conclusory allegations in support of his claim.  Specifically, relator has failed to provide this Court with any transcripts of Massel's testimony, or any affidavits evidencing that his trial counsel indeed failed to research Massel's criminal background.  Therefore, on the showing made, we find that relator failed to show that the trial court erred in denying this claim.

In his second claim, relator alleges that his trial counsel rendered ineffective assistance by failing to obtain specific cell phone records of Deputy Higgerson and Baratinni, which resulted in the denial of relator's ability to present a full defense at trial.  His trial counsel requested the records through a pre-trial motion for discovery, which the trial court denied.  Relator's counsel lodged an oral notice of intent to seek writs, but failed to file a supervisory writ application as to the trial court's ruling.  Relator alleges that his trial counsel's failure to obtain the cell phone records, and his failure to seek review of the trial court's denial of relator's request for the cell phone records constituted deficient performance under Strickland.  The trial court denied relator's claim, finding that the claims were purely speculative and conclusory.  We agree.  We find that relator has failed to make any showing demonstrating that this Court, or the Louisiana Supreme Court, would have granted his writ application regarding the trial court's denial of his motion requesting the cell phone records, had it been filed.  Therefore, we find no error in the trial court's denial of this claim.

In his third claim, relator alleges that his trial counsel rendered ineffective assistance by failing to call any witnesses at trial, but specifically, relator's girlfriend Christy Hardigree.  In his writ application, relator contends that Hardigree was present at the scene on the evening when he allegedly made the statement in question to Baratinni.  He further contends that Hardigree was present at his trial, and would have refuted Baratinni's testimony regarding the alleged statement, but that his trial counsel failed to interview her or to call her to testify at trial.  The trial court denied relator's claim, finding that the decision as to whether to call a witness goes to trial strategy.  We find that relator has again failed to provide any evidence in support of this claim.  Relator has not provided any affidavits or documents evidencing the nature of Hardigree's alleged testimony or his counsel's alleged failure to interview Hardigree.  Therefore, on the showing made, we find no error in the trial court's denial of this claim.

....

In his fifth claim, relator alleges that he was denied effective assistance of counsel because his trial counsel "opened the door" to the publication to the jury of the photographs in question and the comments that accompanied them.  Relator contends that on the morning of trial, the State agreed that it would not introduce any evidence of who published the photographs on the internet, including the comments that accompanied them.  However, relator argues that the State introduced the photographs after his trial counsel opened the door to them by questioning a witness about the website where the photographs were posted.  Relator contends that due to highly prejudicial and inflammatory nature of the comments, his trial counsel's error in letting them in had the effect of denying him a fair trial.  Here, relator failed to provide this Court with any transcripts in support

of his claims.  Therefore, on the showing made, we find that relator has failed to show that the trial court erred in denying this claim.[24]

The Louisiana Supreme Court then denied petitioner's related writ applications without assigning additional reasons.[25]

Because an ineffective assistance of counsel claim presents a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claim unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); <u>Moore v. Cockrell</u>, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the <u>Strickland</u> standard was unreasonable.  This is different from asking whether defense counsel's performance fell below <u>Strickland</u>'s standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a <u>Strickland</u> claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the <u>Strickland</u> standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.  <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).  And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  <u>Ibid</u>.  "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."  <u>Knowles v. Mirzayance</u>, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

---

[24] <u>State v. Poupart</u>, No. 14-KH-375, at pp. 1-3 (La. App. 5th Cir. June 24, 2014); State Rec., Vol. 4 of 6.
[25] <u>State *ex rel.* Poupart v. State</u>, 162 So.3d 383 (La. 2015); <u>State v. Poupart</u>, 162 So.3d 382 (La. 2015); State Rec., Vol. 4 of 6.

Harrington v. Richter, 562 U.S. 86, 101 (2011) (citation omitted).  The Supreme Court then explained:

> Surmounting Strickland's high bar is never an easy task.  An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.  The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult.  *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.*  The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  *When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

Id. at 105 (citations omitted; emphasis added).  Therefore, on a habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt."  Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted).  For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claim.

Here, the state court correctly identified the clearly established federal law which governs ineffective assistance of counsel claims:  Strickland v. Washington, 466 U.S. 668 (1984).  As the state court noted, Strickland established a two-prong test for evaluating such claims.  Specifically, a petitioner seeking relief must demonstrate (1) that counsel's performance was deficient and (2)

that the deficient performance prejudiced his defense. Id. at 697. A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the

relative role that the alleged trial errors played in the total context of [the] trial."     Crockett, 796 F.2d at 793.

As noted, petitioner first argues that counsel failed to adequately investigate Massel's criminal record and to use evidence of his criminal history to impeach him.  However, as the state court correctly noted, petitioner failed to meet his burden of proof by presenting evidence showing that, in fact, counsel failed to investigate this issue and was unaware of Massel's criminal history.

Moreover, this Court cannot simply assume that occurred, because other plausible explanations are possible.  For example, counsel may have been aware of the information and simply elected to forgo questioning Massel on that issue because, as a matter of professional judgment, he felt the risks outweighed the benefits.  Although Massel's testimony supported the state's case, it was hardly crucial – on the contrary, it was cumulative, merely corroborating the facts already established through Baratinni's testimony.  If counsel had vigorously questioned Massel regarding his criminal history – an issue which was tangential at best – it could have backfired, because it might have been interpreted by the jury as badgering Massel over something only minimally relevant to the subject of his testimony.  Where an action poses risks as well as possible benefits, counsel is afforded the leeway to make a strategic choice without being deemed in hindsight to have performed deficiently.[26]

---

[26]  Clearly, "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment."  Ford v. Cockrell, 315 F. Supp. 2d 831, 859 (W.D. Tex. 2004), aff'd, 135 Fed. App'x 769 (5th Cir. 2005); see also Lewis v. Cain, Civ. Action No. 09-2848, 2009 WL 3367055, at *8 (E.D. La. Oct. 16, 2009), aff'd, 444 Fed. App'x 835 (5th Cir. 2011); Williams v. Cain, Civ. Action Nos. 06-0224 and 06-0344, 2009 WL 1269282, at *11 (E.D. La. May 7, 2009), aff'd, 359 Fed. App'x 462 (5th Cir. 2009); Parker v. Cain, 445 F. Supp. 2d 685, 710 (E.D. La. 2006).  Courts are not to second-guess counsel's decisions on such tactical matters through the distorting lens of hindsight; rather, they are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy.  Strickland, 466 U.S. at 689.  It is irrelevant that another attorney might have made other choices or handled such issues differently.  As the Supreme Court noted:  "There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way."  Id.

With respect to petitioner's second claim that his counsel was ineffective for failing to secure the cell phone records of Higgerson and Baratinni, petitioner has failed to show the prejudice required to support his claim. Specifically, petitioner's suggestion that that the records *might* have been helpful to the defense is sheer speculation – it has never been established what those records would show or fail to show. For that reason, alone, this claim fails.[27]

With respect to petitioner's claim that counsel was ineffective for failing to call Hardigree or other witnesses to testify, it must be noted that such claims are disfavored and subject to a high burden of proof:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. For this reason, *we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense.* This requirement applies to both uncalled lay and expert witnesses.

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted; emphasis added); accord Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done

---

[27] Nevertheless, it must also be noted that counsel *did* in fact attempt to obtain those records through discovery; the trial court simply denied the request. State Rec., Vol. 2 of 6, transcript of June 4, 2010. It is true that counsel could have pursued the matter further – for example, he could have, but did not, seek review of the trial court ruling. However, petitioner has not established that he was prejudiced by counsel's failure to do so, because there is no reason whatsoever to believe that further efforts would have borne fruit. On the contrary, as noted, the Louisiana Fifth Circuit Court of Appeal expressly held in the post-conviction proceedings that petitioner "failed to make any showing demonstrating that [it], or the Louisiana Supreme Court, would have granted his writ application regarding the trial court's denial of his motion requesting the cell phone records, had it been filed," and the Louisiana Supreme Court likewise denied relief with respect to this claim. State v. Poupart, No. 14-KH-375, at p. 2 (La. App. 5th Cir. June 24, 2014), writs denied, 162 So.3d 382 and 383 (La. 2015); State Rec., Vol. 4 of 6. It would seem inappropriate for this Court to now find that the state courts would have been inclined to grant such a writ application where, as here, the state courts have clearly indicated that they would not be so inclined.

so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

Here, petitioner failed to provide the required affidavits or any other evidence demonstrating that Hardigree or others would in fact have testified in a manner beneficial to the defense. Therefore, again, petitioner, has clearly failed to meet his burden with respect to this claim, and so this claim must be denied. See, e.g., United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); Buniff v. Cain, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); Combs v. United States, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); Harris v. Director, TDCJ-CID, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

Lastly, petitioner argues that his counsel was ineffective when he questioned a witness about the The Dirty.com website, thereby "opening the door" for the prosecution to introduce downloaded images from the website which petitioner believes contained prejudicial hearsay. However, that simply is not what occurred at trial. The transcript reflects that the state moved to introduce the images during the direct testimony of Higgerson, and the court overruled the defense

objections *not* because the defense counsel had "opened the door" for the introduction of such

evidence, but instead because the images were independently admissible.[28]  In that the introduction

---

[28] On direct appeal, the Louisiana Fifth Circuit Court of Appeal explained:

> Defendant argues that the State should have been prohibited from introducing the printouts of the two pictures from *The Dirty.com* website because *The Dirty.com* website information attached to the pictures was inadmissible hearsay.  He contends that the State "intended to make it look as if the defendant posted the pictures [on the internet] without any proof that he did."  He asserts that this "effectively eliminated [his] opportunity to confront and contradict the suggestion that he published the pictures."
>
> On January 12, 2011, defendant filed a "Motion to Limit Hearsay Evidence," arguing that the State should be prohibited from introducing hearsay testimony related to the pictures published on *The Dirty.com* website.  Specifically, defendant asserted that the State intended to introduce evidence of the two photographs that were published on *The Dirty.com* website, who published the photographs, and when they were published.   Defendant argued that a *Dirty.com* employee must testify concerning this information and "testimony from anyone other [than] a *Dirty[.com]* employee is based on unexcepted hearsay."  On the morning of trial, it appeared that the State and defense counsel had reached an agreement on this issue.  The State indicated that it did not intend to put on any testimony or evidence regarding who posted the pictures, but would probably introduce the two photographs that were downloaded from *The Dirty.com* website.  Defense counsel indicated that he did not have a problem with that.
>
> Thereafter, during trial, the State sought to introduce State exhibits one and two, which were the pictures from *The Dirty.com* website, and defense counsel objected stating that these exhibits were exactly why he filed his motion.
>
> State exhibit one contains a picture of a girl on the hood of Detective Higgerson's vehicle in a suggestive pose.  *The Dirty.com* logo is in the bottom right corner of the picture.  Underneath the picture, it states:
>
>> **THE DIRTY ARMY:**  Steve Higgerson is a 3rd district detective in Jefferson Parish.  While on duty on a detail at Mike's Place in Fat City, he has strippers on top his car instead of doing his job!  Then has the nerve to testify in court and lie on the satnd [sic] numerous times!  How the hell does he know what the hell was going on when he has a stripper bustin [sic] it open on the car, with a big smile on his face!  This is who is suppose [sic] to be protecting our city!  Damn, if this is what being an officer is all about I wanna [sic] be one too!!!  **Looks like you are busted Copper ... pictures don't lie.-nik**
>
> (Emphasis in original.)
>
> State exhibit two contains a picture of a girl on the hood of Detective Higgerson's vehicle in another suggestive pose.  In the picture, Detective Higgerson is standing next to the vehicle, and *The Dirty.com* logo is in the bottom right corner.  It states, "JPSO Finest 'Steve Higgerson'" at the top of the page.
>
> Defense counsel argued that the two pieces of paper identified as State exhibits one and two should not be admitted into evidence because they contain hearsay, and he would be unable to cross-examine the hearsay in the documents.  Defense counsel further asserted that the documents were highly prejudicial and the State was trying "to back door the linkage between [defendant] and *The Dirty.com* [website] posting which he cannot prove."
>
> Conversely, the prosecutor argued that State exhibits one and two were not hearsay because he was "not trying to prove the truth of any of the verbiage on [the] picture."  He asserted, "The State's intention in introducing these is that the evidence we have been producing is that a threat was made, that ... if this police officer testified at the defendant's other trial he would be

of the images cannot fairly be attributed to any deficient performance on the part of defense counsel, petitioner's ineffective assistance of counsel claim based on the introduction of the images necessarily fails.

### "Vindictive Prosecution"

Petitioner next argues that he was the victim of a vindictive prosecution, opining that authorities instituted the prosecution not because of the alleged threat to Higgerson but instead only because they were angry that the embarrassing photographs were in fact posted online. The state argues this claim is procedurally barred. The state is correct.

The United States Fifth Circuit Court of Appeals has held:

A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision. To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims. This rule applies to state court judgments on both substantive and procedural grounds.

---

embarrassed, he would be sorry. As soon as he testified this is what appeared on the internet. That's the relevance of it."

The trial court overruled defense counsel's objection, stating that he was going to inform the jury that the exhibits were not being offered for the truthfulness of the matter asserted, but were being offered to "show that that is what was produced online." Defense counsel moved for a mistrial, which the trial court denied.

Hearsay is an oral or written assertion, other than one made by the declarant while testifying at this trial, offered in evidence to prove the truth of the matter asserted. LSA-C.E. art. 801(C). Hearsay evidence is not admissible except as otherwise specified in the Louisiana Code of Evidence or other legislation. LSA-C.E. art. 802.

Defendant argues that the State should have been precluded from introducing State exhibits one and two because *The Dirty.com* website information attached to the pictures was inadmissible hearsay. Defendant's argument is misplaced. These exhibits do not constitute hearsay because the documents were not offered into evidence to prove the truth of the information attached to the pictures on the website. These exhibits were only introduced to show that the pictures in question were in fact posted on the internet.

State v. Poupart, 88 So.3d 1132, 1135-37 (La. App. 5th Cir. 2012); State Rec., Vol. 2 of 6.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).  Moreover, where a lower court has rejected a claim on procedural grounds, later opinions upholding that decision are presumed to rely on the same grounds if reasons are not assigned.  Id. ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground.").

Here, there is no question that the state courts clearly and expressly denied this claim on procedural grounds.  In the state post-conviction proceedings, the Louisiana Fifth Circuit Court of Appeal rejected the claim, holding:

> [R]elator claims that the bill of information charging him with one count of public intimidation was the result of vindictive prosecution.  The trial court denied this claim, finding that if an APCR alleges a claim which the petitioner had knowledge of and inexcusably failed to raise in the proceedings leading to conviction, the trial court may deny relief.  See La. C.Cr.P. 930.4.  After reviewing relator's application, we find no error in the trial court's denial of this claim.[29]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[30]

There is likewise no question that procedural rule on which the state courts relied, i.e. La. Code Crim. P. art. 930.4 (B),[31] is an independent and adequate state court rule sufficient to support a procedural bar in federal court.  See, e.g., Welch v. Cain, Civ. Action No. 12-38, 2015 WL 1526446, at *8 (M.D. La. Apr. 2, 2015); Robinson v. Cooper, Civ. Action No. 12-1327, 2013 WL 2154011, at *5 (E.D. La. May 2, 2013); Brown v. Cain, Civ. Action No. 11-2267, 2011 WL 7042222, at *8 (E.D. La. Dec. 20, 2011), adopted, 2012 WL 123288 (E.D. La. Jan. 17, 2012), aff'd, 535 Fed. App'x 356 (5th Cir. 2013); Thomas v. Cain, Civ. Action No. 11-2408, 2011 WL

---

[29] State v. Poupart, No. 14-KH-375, at p. 3 (La. App. 5th Cir. June 24, 2014); State Rec., Vol. 4 of 6.
[30] State ex rel. Poupart v. State, 162 So.3d 383 (La. 2015); State v. Poupart, 162 So.3d 382 (La. 2015); State Rec., Vol. 4 of 6.
[31] Article 930.4(B) states:  "If the [post-conviction relief] application alleges a claim of which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to conviction, the court shall deny relief."

6046536, at *5 (E.D. La. Nov. 17, 2011), adopted, 2011 WL 6028779 (E.D. La. Dec. 5, 2011); Young v. Travis, Civ. Action No. 07-3542, 2011 WL 494811, at *8 (E.D. La. Jan. 13, 2011), adopted, 2011 WL 494802 (E.D. La. Feb. 4, 2011); Jones v. Cain, Civ. Action No. 10-0187, 2010 WL 3312592, at *5-6 (E.D. La. July 29, 2010), adopted, 2010 WL 3312594 (E.D. La. Aug. 19, 2010); Green v. Cooper, Civ. Action No. 06-1657, 2009 WL 87590, at *10 (E.D. La. Jan. 8, 2009).

Where, as here, the state courts have rejected a petitioner's claim based on an independent and adequate state procedural rule, "federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999). In the instant case, petitioner demonstrates neither.

"To establish cause for a procedural default, there must be something external to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted). Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel. Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir. 1992).

Here, petitioner argues that this claim was not raised in the proceedings leading to his conviction due to the ineffective assistance of counsel. However, although petitioner raised other ineffective assistance of counsel claims to the state courts, he has never asserted an independent claim that his counsel was ineffective for failing to raise a "vindictive prosecution" claim.[32] As a

---

[32] The fact that a petitioner has exhausted other ineffective assistance of counsel claims does not render exhausted other such claims which are based on different facts and theories. See Ogan v. Cockrell, 297 F.3d 349, 358 (5th Cir. 2002); Burns v. Estelle, 695 F.2d 847, 849-50 (5th Cir. 1983); Bruce v. Deville, Civ. Action No. 15-1008, 2015 WL 6440336, at *5 n.33 (E.D. La. Oct. 21, 2015); Evans v. Rader, Civ. Action No. 13-0196, 2013 WL 2154124, at *2 n.13 (E.D. La. Apr. 23, 2013).

result, any such claim is unexhausted and, therefore, is itself procedurally defaulted.[33]  It is clear that a procedurally defaulted ineffective assistance of counsel claim may not serve as "cause" unless the petitioner also shows "cause and prejudice" for *that* default.  See Edwards v. Carpenter, 529 U.S. 446, 451-54 (2000);[34] Rachal v. Quarterman, 265 Fed. App'x 371, 375 (5th Cir. 2008).  Petitioner has not made that showing in this case.  Therefore, the defaulted ineffectiveness of counsel claim cannot serve as "cause "for the default of the "vindictive prosecution" claim.  In light of that fact, and because petitioner has established no other "cause" for default of the "vindictive prosecution" claim, the Court need not consider whether actual prejudice would result from the application of the procedural bar to that claim.  Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996) ("Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice.").

---

[33] A claim is procedurally defaulted if the "prisoner fail[ed] to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred."  Nobles v. Johnson, 127 F.3d 409, 420 (5th Cir. 1997) (internal quotation marks omitted). Any attempt by petitioner to now raise the claim in a new state post-conviction would obviously be denied as both repetitive under La. Code Crim. P. art. 930.4 and untimely under La. Code Crim. P. art. 930.8.

[34] In Edwards, the United States Supreme Court explained:

> Although we have not identified with precision exactly what constitutes "cause" to excuse a procedural default, we have acknowledged that in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice. [Murray v. ]Carrier, 477 U.S. [478,] 488-489, 106 S.Ct. 2639 [(1986)].  Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution. Ibid.  In other words, ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim.  And we held in Carrier that the principles of comity and federalism that underlie our longstanding exhaustion doctrine -- then as now codified in the federal habeas statute, see 28 U.S.C. §§ 2254(b), (c) -- require that constitutional claim, like others, to be first raised in state court.  "[A] claim of ineffective assistance," we said, generally must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." Carrier, *supra*, at 489, 106 S.Ct. 2639.
>
> ….
>
> To hold, as we do, that an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted is not to say that that procedural default may not *itself* be excused if the prisoner can satisfy the cause-and-prejudice standard with respect to that claim.

Edwards, 529 U.S. at 451-54 (emphasis in original).

In that petitioner has not met the "cause and prejudice" test, this Court should consider this claim only if the application of the procedural bar would result in a "fundamental miscarriage of justice." However, in order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted." Finley, 243 F.3d at 220 (citations omitted).

Here, petitioner does in fact allege that he is actually innocent. However, merely alleging actual innocence does not suffice. Rather, a petitioner who invokes the "actual innocence" exception to overcome a procedural bar must, as a "threshold requirement," "persuade[] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Schlup v. Delo, 513 U.S. 298, 329 (1995). Therefore, this does not "merely require a showing that a *reasonable doubt* exists in the light of the new evidence, but rather that *no reasonable juror would have found the defendant guilty*. It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do." Id. (emphasis added). Moreover, the United States Supreme Court explained: "To be credible, such [an actual innocence] claim requires petitioner to support his allegations of constitutional error with *new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.* Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Id. at 324 (emphasis added).

As explained *supra*, the evidence at trial, specifically the testimony of Baratinni and Massel, was more than sufficient to support the guilty verdict in the instant case. Moreover,

35

petitioner has presented no "new evidence" of the type or caliber referenced in Schlup which, when considered along with the evidence at trial, would now cast this case in such a different light that no reasonable juror would have found him guilty. Therefore, he has not made the threshold showing for an "actual innocence" claim, and, accordingly, his "vindictive prosecution" is procedurally barred.

Nevertheless, out of an abundance of caution, the Court notes that petitioner's "vindictive prosecution" claim has no merit in any event. It is clear that "the substantial discretion traditionally accorded state prosecutors in bringing defendants to trial on criminal charges is subject to the due process guarantees of the Fourteenth Amendment" and that prosecutorial vindictiveness can in *some* circumstances violate those constitutional guarantees. Miracle v. Estelle, 592 F.2d 1269, 1272 (5th Cir. 1979). However, it is also clear that "[s]ome selectivity in the decision to prosecute criminal offenses is constitutionally permissible and appropriate, and courts will normally tread lightly when reviewing that decision. A defendant seeking to establish impermissibly selective vindictive prosecution must meet a substantial burden." United States v. Lamberti, 847 F.2d 1531, 1535 (11th Cir. 1988) (citations omitted). On that point, the United States Fifth Circuit Court of Appeals has explained:

> In order to prevail in a defense of selective prosecution, a defendant must meet two requirements which we have characterized as a "heavy burden." United States v. Johnson, 577 F.2d 1304, 1308 (5th Cir. 1978) (quoting United States v. Berrios, 501 F.2d 1207, 1211 (2d Cir. 1974)). First, he must make a *prima facie* showing that he has been singled out for prosecution although others similarly situated who have committed the same acts have not been prosecuted. United States v. Tibbetts, 646 F.2d 193, 195 (5th Cir. 1981). Second, having made the first showing, he must then demonstrate that the government's selective prosecution of him has been constitutionally invidious. Id.

United States v. Jennings, 724 F.2d 436, 445 (5th Cir. 1984).

Here, petitioner cannot even make it past the first prong of that analysis. He has not even alleged, much less shown, that he was prosecuted for public intimidation when others making similar threats went unprosecuted. Therefore, this claim, even if it were not procedurally barred, would necessarily fail on that basis alone.[35]

## **"Actual Innocence"**

Lastly, petitioner argues that he is entitled to relief simply because he is in fact actually innocent. However, although a claim of "actual innocence" can be used to overcome a procedural bar, as in Schlup, or the statute of limitations, as in McQuiggin v. Perkins, 133 S. Ct. 1924 (2013), it is not an independent substantive ground for habeas corpus relief. See, e.g., *In re* Swearingen, 556 F.3d 344, 348 (5th Cir. 2009) ("The Fifth Circuit does not recognize freestanding claims of actual innocence on federal habeas review."); Foster v. Quarterman, 466 F.3d 359, 367 (5th Cir. 2006) ("[A]ctual-innocence is *not* an independently cognizable federal-habeas claim."). As Justice Holmes noted long ago, what a federal habeas court has "to deal with is not the petitioner['s] innocence or guilt but solely the question whether [his] constitutional rights have been preserved." Moore v. Dempsey, 261 U.S. 86, 87-88 (1923). Nevertheless, in any event, petitioner has not in fact asserted a credible "actual innocence" claim for the reasons already explained.

---

[35] The Court also makes one additional observation. Here, petitioner argues that his prosecution was based on the fact that employees of the Sheriff's Office were angry at him for embarrassing their department; there is no indication that the District Attorney's Office, a separate and distinct legal entity, shared any such purported animosity. That, too, undercuts petitioner's claim, because "[i]n all but the most extreme cases, it is only the biases and motivations of the *prosecutor* that are relevant. The purported motivation of another agency … is no indication that the prosecutor brought charges against [a defendant] to punish him for his action against [another agency]." United States v. Gilbert, 266 F.3d 1180, 1187 (9th Cir. 2001) (emphasis added). Therefore, "the proper focus for claims of selective or vindictive prosecution is on the ultimate decision-maker. … The Court will not attribute any alleged ill-will, animosity, or vindictiveness of the … investigator to the prosecution team." United States v. Hughes, Nos. 3:94-CR-0075 and 98-CV-0488, 2006 WL 3246571, at *6 (N.D. Tex. Nov. 7, 2006) (quotation marks and citations omitted).

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Paul Poupart be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[36]

New Orleans, Louisiana, this twenty-fifth day of April, 2016.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[36] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.